Case 1:17-cv-07465-CBA   Document 15   Filed 12/22/20   Page 1 of 18 PageID #: 1302

Clerk's Office
Filed Date:  12/22/2020
4:51 PM

U.S. DISTRICT COURT
EASTERN DISTRICT OF
NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MELVIN PORTER,

        Petitioner,

  -against-

WILLIAM KEYSER, Superintendent, Sullivan Correctional Facility,

        Respondent.
-------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
17-CV-7465 (CBA)

**AMON, United States District Judge:**

Petitioner Melvin Porter brings this counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.E. # 1.) Porter was convicted in Supreme Court, Queens County, following a nonjury trial, for four counts of second-degree criminal possession of a weapon, four counts of third degree criminal possession of a weapon, one count of seventh degree criminal possession of a controlled substance, and one count of operating a motor vehicle with a windshield obstructed. Porter argues that his trial counsel was ineffective for failing to advance certain allegedly meritorious suppression arguments that had a reasonable probability of leading to the suppression of all physical evidence seized by law enforcement and admitted against him at trial. (D.E. # 3 ("Pet'r Mem.") at 2.) For the reasons set forth below, Porter's petition is denied.

## BACKGROUND

The following evidence was adduced at a joint pretrial suppression hearing. Police Officer Oleg Matat testified that, in the early morning on July 7, 2019, he and his partner, Police Officer Triantiflidis, were patrolling in plainclothes in an unmarked van in the vicinity of Broadway and 36th Street in Queens County. (H1. at 8–10.)[1] Sometime after 2 a.m., Matat first heard over the

---

[1] References to the pretrial suppression hearing are designated "H1"; references to the oral argument on the suppression motion are designated "H2"; references to the bench trial are designated "T"; references to the sentencing are designated "S"; and references to the state court record are designated "SR."

1

radio about a shooting, and Matat and his partner began canvassing the area. (H1. at 57–58; 80–81.) Subsequent radio transmissions included additional details about the suspected perpetrators, who were two black males (one wearing a gray shirt and dark pants, one wearing all brown or all black), one Hispanic male, and one Hispanic female with checkered shorts, all in their twenties. (H1. at 36–37, 57, 116.)

Around 3:40 in the morning, Matat observed a tan Toyota Corolla—driven by Porter—that was "low to the ground," which to Matat meant the car "was either packed with people or it had something heavy in the trunk." (H1. at 10–11, 13–14, 37.) Matat also observed a stethoscope hanging off the rear-view mirror obstructing the driver's view. (H1. at 11.) Matat and his partner followed the vehicle, observed it turn without using a signal, followed the vehicle for three to four blocks while traveling at 40 to 50 miles per hour in a 30 mile-per-hour zone, and pulled the vehicle over. (H1. at 11–13.) In addition to identifying Porter, Matat identified Jerome Abraham in the passenger seat and Michael Soto, Jennifer Cabezas, and Dennis Crandle in the back seat. (H1. at 14–16.) Looking through the front passenger window, Matat observed an orange-colored, white-capped "medicine bottle in the center console of the vehicle" with "[n]o writing on it or prescription." (H1. at 16–17; see also H1. at 43.) He testified on direct examination that the bottle contained nine pills, (H1. at 44); on cross-examination, however, Matat admitted he could not see how many pills there were, but only that they were pills of varying types and filled about half an inch of the bottle, (H1. at 72, 94). Matat acknowledged that he did not know what kind of pills were in the bottle and that they "could have been" aspirin, (H1. at 44), but he was trained in the identification and packaging of controlled substances, (H1. at 17), and believed the pills were controlled substances, (H1. at 93).

The officers did not remove the bottle at that point. (H1. at 45.) Although none of the five individuals made any threatening gestures or remarks, Matat explained there were two officers and five individuals in the vehicle, so he "wanted to be cautious" for the officers' safety. (H1. at 45.) Although Matat's testimony is not entirely clear, at around the same time, the officers called for assistance and asked the individuals to step out of the vehicle. (H1. at 46, 73, 93.) The officers also radioed for the description of the suspects in a robbery earlier that night—which "kept on playing back" from dispatch—although Matat could not remember whether he or his partner made the call and whether it was before or after the five individuals were taken out of the car. (H1. at 47–48.) Matat admitted that, when the five individuals were asked to get out of the car, they had no information that anyone had done anything illegal—it was because of "what we saw on the center console." (H1. at 107–08.) Matat recovered the pill bottle. (H1. at 113.) He also asked Porter for permission to search his trunk, received permission, opened it, and saw nothing inside. (H1. at 55, 95–96, 117–20.)

Sergeant Almonte testified that, when he arrived on the scene, he saw the individuals—three black males, one Hispanic male and one Hispanic female—with one black male much older than the others. (H1. 156.) He noticed they matched the description of the suspects in the shooting that took place about an hour before. (H1. 156.) He took Cabezas aside and asked her where she was coming from, and Cabezas said "they were involved in shooting earlier," "she didn't want anything to do with the shooting," and she did not "know why they shot." (H1. 157.) Matat testified that after Sergeant Almonte spoke with Cabezas, all five individuals were handcuffed. (H1. at 74.)

After the five individuals were brought to the 114th Precinct, Matat opened the trunk in the parking lot of the Precinct to conduct an inventory search. (H1. at 53, 96.) Matat observed a box

of latex gloves that contained gloves and a black revolver. (H1. at 54.) He did not remove the revolver, but instead closed the trunk, told Sergeant Almonte what he saw, and went to get a search warrant. (H1. at 54, 96–97, 122.) Almonte testified that the subsequent search recovered three firearms. (H1. 162.) Almonte said Matat did not inform him that Porter earlier consented to the search of his car. (H1. 181, 198–99.)

At oral argument on the motion to suppress, Porter's counsel expressly joined in the arguments made by his co-defendant's attorneys. (H2. 2, 17.) Collectively, counsel argued that Matat was not credible and the car was stopped for pretextual reasons. (H2. 3–9.) As to the bottle, counsel for Porter's co-defendant argued in relevant part:

> Now, according to their testimony is that after they allegedly see this bottle, they say he sees pills. He can not determine what kind of pills they are, whether they are aspirin or whether they are cholesterol pills. They are white pills. There is no telltale sign that what's contained in that particular medicine bottle is indicia of any criminality. He then goes back with his fellow officer back to their van and at that point there is some discussion that takes place between the officers and the van. They come back to the vehicle, and at that point, Judge, they rise the level of intrusion by the Police Department to order them out of the vehicle. Now there is not at this point an issue of safety. It's an issue because according to Officer Matat he says that that bottle is contraband.
>
> I submit to the Court, Judge, based upon those facts that was submitted, would the Court issue a search warrant to say you can now search that particular bottle[?] There has been nothing that's been radioed relative to this vehicle again that would indicate that this vehicle was involved in any criminal activity.
> . . .
>
> There was no new information that would indicate that vehicle at that time was involved in any criminality that will requires then an officer to raise the level of intrusion to go into the vehicle, look into the vehicle, search the vehicle recover an item and then at that point determine we are going to order you out and detain you based upon what we believe to be contraband in that bottle. And then I will argue, I reiterate, that bottle, there is no indicia that what's in that bottle is criminal at all, and there is no information or new information that those officers received at that juncture much that would indicate they had a right to order these individuals out of the car and know the search of that bottle which they allege to be contraband.

(H2. 8–10.)

>After expressly adopting the arguments of co-defendants' counsel, Porter's counsel stated:
>
>I think clearly if your Honor credits the testimony of the police in this case, they obviously have probable cause to stop the vehicle, and obviously once they have probable cause, the officer saw what he saw in the vehicle and everything follows, you know, routinely after that. . . . The credibility of the police in this case is clearly the issue here.

(H2. 17.)

In particular, Porter's counsel argued that it would have been physically impossible to see the pill bottle from Matat's viewpoint, that it was evident that the officers conducted an illegal search, the officers' testimony contradicted common sense, and the officers were attempting to justify the search and arrest after the fact. (H2. 18–21.)

The court found the testimony of the testifying police officers, including Matat and Almonte, "to be credible and worthy of belief", (H2. 27), and entered factual findings following the hearing. (H2. 27–30.) The court concluded that, based on Porter's failure to signal while turning, Matat had a reasonable basis for stopping the vehicle. (H2. 31–32.) When Matat "observed an unmarked pill bottle in the car and that the occupants of the vehicle with the exception of defendant Porter closely resembled four individuals alleged to have been involved in the shooting earlier [that] morning, less than a mile away from the location where the car was stopped, . . . he had a reasonable basis upon which to order the occupants out of the car, frisk them for his safety and detain them briefly pending your investigation." (H2. 31–32.) Once Almonte spoke with Cabezas, the officers had probable cause to arrest the five individuals. (H2. 32.) The subsequent search of the car was justified by Porter's consent to the search. (H2. 32.) Accordingly, the court denied Porter's motion to suppress, along with those of all his co-defendants. (H2. 34.)

Porter was convicted as charged at a bench trial. (T. 619–21.) He was sentenced as a persistent felony offender to concurrent, indeterminate prison terms of 16 years to life on each

5

count of second-degree weapon possession, two to four years on each count of third-degree weapon possession, one year on the drug possession count, and time served on the traffic violation. (S. 4–6.)

Porter appealed to the Appellate Division, Second Department—represented by the same counsel who represents him in the instant petition—and argued that his trial counsel was ineffective for failing to advance certain allegedly meritorious arguments to suppress tangible evidence. (SR. 1–67.) On April 27, 2016, the Appellate Division affirmed the judgment below. People v. Porter, 28 N.Y.S.3d 906, 907 (N.Y. App. Div. 2016). The Appellate Division reasoned as follows:

> Contrary to the defendant's contention, he was not deprived of the effective assistance of counsel at the suppression hearing (see People v. Benevento, 91 N.Y.2d 708 [1998]; People v. Baldi, 54 N.Y.2d 137 [1981]; see also People v. Caban, 5 N.Y.3d 143, 155-156 [2005]). Defense counsel's conduct at the hearing was reasonably competent under the circumstances (see People v. Benevento, 91 N.Y.2d at 712-713), and, while the defendant contends that defense counsel failed to make certain arguments in support of suppression, those arguments cannot be fairly characterized as clear-cut and dispositive in the defendant's favor (see People v. McGee, 20 N.Y.3d 513, 518 [2013]; cf. People v. Clermont, 22 N.Y.3d 931 [2013]) so as to render defense counsel ineffective for failing to make them.

Porter, 28 N.Y.S.3d at 907.

On October 12, 2016, the Court of Appeals denied leave to appeal. People v. Porter, 68 N.E.3d 111 (N.Y. 2016). On December 22, 2017, Porter filed the instant petition.

## STANDARD OF REVIEW

### A. AEDPA Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a person in custody pursuant to the judgment of a State court may petition a federal court for "a writ of habeas corpus . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner seeks review of a claim

6

"adjudicated on the merits in State court proceedings," AEDPA "sharply limits the circumstances in which a federal court may issue a writ of habeas corpus," Johnson v. Williams, 568 U.S. 289, 298 (2013), and "imposes a highly deferential" standard of review, Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam)); see also 28 U.S.C. § 2254(d).

A district court applying AEDPA deference may grant an application for a writ of habeas corpus only where the state adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2); see also Williams v. Taylor, 529 U.S. 362, 405–06 (2000); Evans v. Fischer, 712 F.3d 125, 132–33 (2d Cir. 2013).  "'[C]learly established Federal law' refers to holdings, and not dicta, of cases decided by the Supreme Court, as opposed to lower federal courts." Fischer, 712 F.3d at 133 (citing Taylor, 529 U.S. at 412).  A state court's ruling on the merits is "contrary to" a clearly established Supreme Court holding if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Taylor, 529 U.S. at 412–13.  An "unreasonable application" of clearly established Supreme Court precedent occurs when "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  "An application of law is 'unreasonable' only if it involves '[s]ome increment of incorrectness beyond error.'" Fischer, 712 F.3d at 133 (quoting Overton v. Newton, 295 F.3d 270, 277 (2d Cir. 2002)); see also Harrington v. Richter, 562 U.S. 86, 101 (2011) (holding that if "'fairminded jurists could disagree' on the correctness of the state

7

court's decision," that decision is not unreasonable (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004))); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (noting that whether a state court's determination was unreasonable is "a substantially higher threshold" than whether that determination was incorrect).

### B.  Standards for Evaluating § 2254 Petitions Based on Strickland

The clearly-established federal standard applicable to claims alleging ineffective assistance of counsel is provided by Strickland v. Washington, 466 U.S. 668, 687 (1984). Taylor, 529 U.S. at 391.  Under Strickland, to establish a deprivation of the Sixth Amendment right to effective assistance of counsel, a petitioner must satisfy both the "performance" and "prejudice" prongs of the test.  Specifically, the petitioner must show that (1) "counsel's performance was deficient," meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense," meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Rivas v. Fischer, 780 F.3d 529, 546-47 (2d Cir. 2015) (quoting Strickland, 466 U.S. at 687).

Under the performance prong, a court determines whether "counsel's representation fell below an objective standard of reasonableness," indulging "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 688–89.  A court "must bear in mind both that counsel 'has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process' and that counsel must have 'wide latitude' in making tactical decisions."  Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 688–89).  Although actions or omissions that may be considered sound strategy will not violate the performance prong, "ineffective assistance may be found where

8

counsel 'omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" Brown v. United States, 167 F.3d 109, 110 (2d Cir. 1999) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).  Finally, to satisfy the prejudice prong, petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010) (quoting Taylor, 529 U.S. at 391).  A "reasonable probability" is one "sufficient to undermine confidence in the outcome."  Rivas, 780 F.3d at 550 (quoting Strickland, 466 U.S. at 694).

Although Stone v. Powell, 428 U.S. 465, 494 (1976), generally bars courts from directly considering a Fourth Amendment challenge in a habeas petition, a court may consider an ineffective assistance claim "founded primarily on incompetent representation with respect to a Fourth Amendment issue."  Palacios v. Burge, 589 F.3d 556, 561 (2d Cir. 2009) (quoting Kimmelman v. Morrison, 477 U.S. 365, 380 (1986)).  When pressing such a claim, a petitioner must also show "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006) (quoting Kimmelman, 477 U.S. at 375).

As earlier noted, on top of the "weighty[] burden" that the Strickland test itself places on a petitioner, Hemstreet v. Greiner, 491 F.3d 84, 89-90 (2d Cir. 2007), in order to "establish eligibility for habeas relief under AEDPA's deferential standard, a [petitioner] must demonstrate that the Appellate Division's application of Strickland was not merely incorrect, but objectively unreasonable." Id. (internal quotation marks omitted).  Indeed, "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult [because] [t]he standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."

9

## DISCUSSION

### I.   Porter's Ineffective Assistance Claim

Porter argues that: (1) the Appellate Division's decision rejecting his ineffective assistance of counsel claim employed a legal standard contrary to Strickland; and, in the alternative, (2) the Appellate Division unreasonably applied Strickland to his case. (Pet'r Mem. at 54–61.) Porter further requests that this Court issue a certificate of appealability, even if it denies his petition. (Pet'r Mem. at 63.)

Respondent argues that the Appellate Division's decision (1) was not contrary to Strickland, because the New York standard for evaluating ineffectiveness is consistent with the federal standard, (D.E. # 8-1 ("Def. Opp'n") at 18–21);  and (2) was not an erroneous, let alone objectively unreasonable, application of Strickland, because (a) the allegedly meritorious argument that Porter claims his trial counsel failed to press was, in fact, made by counsel and rejected by the court; and (b) any allegedly meritorious argument that counsel purportedly failed to raise would not have a reasonable probability of changing the result of the proceeding if raised because: (i) the argument was without merit under binding Fourth Amendment jurisprudence, and (ii) the trial court denied the suppression motion on an additional basis, independent from the alleged error. (Def. Opp'n at 21–28.)

### A.   "Contrary To" Strickland

I first address, and reject, Porter's argument that I should review his Sixth Amendment claim de novo, because the Appellate Division failed to apply the Supreme Court's clearly established law as articulated in Strickland. The Appellate Division concluded that the arguments trial counsel failed to make "cannot be fairly characterized as clear-cut and dipositive in

10

defendant's favor so as to render defense counsel ineffective for failing to make them," principally citing People v. McGee, 986 N.E.2d 907 (N.Y. 2013). Porter, 28 N.Y.S.3d at 907 (internal citations omitted). But, Porter argues, the Supreme Court requires a petitioner arguing ineffective assistance of counsel to show only that the unaddressed Fourth Amendment claim is "meritorious." Kimmelman, 477 U.S. at 375.

Although Porter focuses on the Appellate Division's reliance on McGee, the Appellate Division also concluded that Porter "was not deprived of the effective assistance of counsel at the suppression hearing" and cited People v. Benevento, 697 N.E.2d 584 (N.Y. 1998), People v. Baldi, 429 N.E.2d 400 (N.Y. 1981), and People v. Caban, 833 N.E.2d 213 (N.Y. 2005). In evaluating those cases, the Second Circuit has "recognized that the New York 'meaningful representation' standard is not contrary to the Strickland standard." Rosario, 601 F.3d at 124-25; see also Henry, 409 F.3d at 70 ("[I]n the absence of a contrary decision by this Court en banc, or an intervening Supreme Court decision, we are bound to follow the precedents set in [earlier cases] that the N.Y. Court of Appeals standard is not 'contrary to' Strickland.").

As to McGee, I am not persuaded that its standard is "diametrically different, opposite in character or nature, or mutually opposed" to Strickland and Kimmelman, Lindstadt v. Keane, 239 F.3d 191, 198 (2d Cir. 2001) (quoting Taylor, 529 U.S. at 406), and accordingly conclude that the Appellate Division did not apply a standard contrary to the clearly-established federal law. McGee expounds on New York's meaningful representation standard, explaining that to establish constitutionally deficient representation, "the omission must typically involve an issue that is so clear-cut and dispositive that no reasonable defense counsel would have failed to assert it, and it must be evident that the decision to forgo the contention could not have been grounded in a legitimate trial strategy." McGee, 986 N.E.2d at 909. That is not "diametrically different" from

11

the standard articulated in Kimmelman, in which the Supreme Court held that "[a]lthough a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief." 477 U.S. at 382. "Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence." Id.; cf. Maldonado v. Burge, 697 F. Supp. 2d 516, 526-528 (S.D.N.Y. 2010) (noting that Kimmelman did not define "meritorious" and that "there is some uncertainty under federal law as to precisely what showing is required to satisfy Strickland's prejudice prong where the ineffective assistance of counsel claim is premised on a failure to make a suppression motion").

Moreover, "federal habeas courts should be wary of 'impos[ing] on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim.'" Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001) (quoting Coleman v. Thompson, 501 U.S. 722, 739 (1991)). And the Supreme Court has explained that "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

Under these circumstances, I conclude that the Appellate Division's denial of Porter's ineffective assistance claim was not "contrary to" clearly-established federal law as articulated by the Supreme Court. Accordingly, "relief is appropriate [] only if the state unreasonably applied the governing legal principle to the facts of the prisoner's case." Lindstadt, 239 F.3d at 198 (internal quotation marks and alterations omitted).

### B. "Unreasonable Application Of" Strickland

Porter focuses primarily on trial counsel's failure to argue that the seizure of the pill bottle was unlawful under the plain view exception to the Fourth Amendment, because its contraband nature was not immediately apparent and therefore the officers lacked probable cause to seize it. (Pet'r Mem. at 38–40.) It follows, according to Porter, that his subsequent detention by police based on the pill bottle was unlawful—as there was no basis to arrest him for the shooting or on suspicion of gun possession; that his consent to search the car was therefore inoperative; and that evidence secured pursuant to what he describes as an "unlawful investigatory detention" must be suppressed. (Pet'r Mem. at 43–47.) Respondent persuasively challenges these arguments.

Mindful that the standard in determining whether a state court's application of the relevant federal law was "unreasonable" imposes "a substantially higher threshold" than even clear error, Schriro, 550 U.S. at 473, I conclude that Porter is not entitled relief on his claim that the Appellate Division unreasonably applied clearly established federal law to his case. Porter has failed to show that "there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (quoting Woods v. Donald, 575 U.S. 312, 316 (2015)).

    i.    The Allegedly Neglected Argument Was Raised, Considered, and Rejected

I first agree with Respondent that the allegedly meritorious arguments Porter contends that his trial counsel should have advanced were, in fact, made in substance by co-defendant's counsel, whose argument Porter's trial counsel expressly adopted and incorporated. Co-defendant's counsel explained that Matat could not "determine what kind of pills they are, whether they are aspirin or whether they are cholesterol pills," argued there was "no telltale sign that what's

13

contained in that particular medicine bottle is indicia of any criminality," and questioned whether the hearing court would "issue a search warrant" to seize the pill bottle based on those facts. (H2. 8.) He continued to argue that the stop was pretextual. (H2. 9.) He further stated, "I will argue, I reiterate, that bottle, there is no indicia that what's in that bottle is criminal at all, and there is no information or new information that those officers received at that juncture much that would indicate they had a right to order these individuals out of the car and know the search of that bottle which they allege to be contraband." (H2. 9–10.) Porter argues that co-defendant's counsel never used the words "probable cause" and failed to identify the correct legal standard to the hearing court. (Pet'r Mem. at 51–52; D.E. # 12 ("Pet'r Reply") at 13–16.) But the clear thrust of the argument was that the officers had no basis to seize the bottle or detain the individuals based on their observations concerning the pill bottle. And counsel did submit that the hearing court would not issue a "search warrant" for the pill bottle; a search warrant, of course, requires a showing of probable cause. See Herring v. United States, 555 U.S. 135, 142 (2009). Porter's trial counsel explicitly adopted those arguments. (H2. 17.) That this argument was made and adopted alone provides a sufficient justification to deny the petition for a writ. Cf. Palacios, 589 F.3d at 562 (declining to reach prejudice prong where petitioner failed to establish performance prong).

> ii. The Appellate Division's Determination that the Failure to Raise Certain Arguments Did Not Constitute Ineffective Assistance of Counsel Was Not Objectively Unreasonable
>
> > a. Porter Has Not Established that His Purportedly Unraised Arguments Would Have Been Meritorious or A Reasonable Probability That, But For This Failure, the Result of the Proceeding Would Have Been Different

Assuming arguendo that trial counsel failed to make the argument that there was no basis to seize the pill bottle or to detain the occupants based on the pill bottle, Porter is still not entitled to relief because has established neither Strickland's prejudice prong nor that "there could be no

14

reasonable dispute" as to whether the Appellate Division's decision concerning that point was in error. Woods, 575 U.S. at 316.[2]

The parties sometimes discuss this argument both with reference to Strickland's "prejudice" prong—i.e., whether petitioner has shown "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different", Eze v. Senkowski, 321 F.3d 110, 123 (2d Cir. 2003) (quoting Strickland, 466 U.S. at 694), and the standard imposed by Kimmelman—i.e., whether petitioner has shown "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence", Kimmelman, 477 U.S. at 375 (emphasis added). As one district court aptly described it after canvassing circuit precedent, "it is not entirely clear what 'meritorious' means in this context", Maldonado, 697 F. Supp. 2d at 528–29, but "[t]he weight of the authority and the logic of Kimmelman suggest that petitioner must show, at minimum, a reasonable probability that the suppression motion would succeed, and quite possibly that that the suppression motion would in fact succeed." Id. Strickland supplies the clearly established federal law on ineffective counsel claims. Taylor, 529 U.S. at 391.

Matat testified that he was trained in the identification and packaging of controlled substances, (H1. at 17), and believed that the pills were controlled substances in what he plainly viewed was an unlabeled pill bottle, (H1. at 93). Rather than establishing that Porter's allegedly unraised argument supports a "good Fourth Amendment claim", Palacios, 589 F.3d at 565, the governing law and totality of the circumstances strongly suggest that Matat had probable cause to

---

[2] Additionally, I note that, under the Strickland analysis, where an unraised argument is not a "good Fourth Amendment claim", as here, the petitioner may be considered as having failed to meet his burden under the prejudice or performance prong, since counsel would not violate the latter in deciding not to raise such a claim. See Palacios, 589 F.3d at 566.

15

seize the pill bottle under the plain view doctrine. See e.g., Salvador v. City of New York, No. 15-cv-5164, 2016 WL 2939166, at *4, *6 (S.D.N.Y. May 19, 2016) (finding probable cause for arrest and seizure of pills stored in a plastic bag, which violated a New York law making it "unlawful for an ultimate user of controlled substances to possess such substance outside of the original container in which it was dispensed"); Deanda v. Hicks, 137 F. Supp. 3d 543, 566 (S.D.N.Y. 2015) (during traffic stop, officer's observation that pills were blue and that pill bottle did not have a label, along with his training and experience that allowed him to identify the pills as oxycodone, justified seizure of bottle under plain view exception); see also People v. Abraham, 974 N.Y.S.2d 539 (N.Y. App. Div. 2013) (concluding, with regard to the very traffic stop Porter here challenges, that the "unmarked pill bottle [was] observed in plain view").

Additionally, it would be reasonable to conclude that the probable cause relating to the pills extended to all occupants of the vehicle where no one took ownership of the pill bottle. See Maryland v. Pringle, 540 U.S. 366, 371-72 (2003). Finally, Porter's argument that Matat "conceded that the 'small white pills' inside the bottle could have been aspirin", (Pet. Mem. at 8), misses the point: Matat maintained in his testimony that he "believe[d] that it was controlled substances," (id.) and "[i]t is not necessary that an officer know with certainty that an object seized is or contains evidence of a crime at the moment of seizure." United States v. Faltine, No. 13-CR-315 KAM, 2014 WL 4370811, at *16 (E.D.N.Y. Sept. 2, 2014) (quoting United States v. Delva, 13 F. Supp. 3d 269, 276 (S.D.N.Y. 2014)).

Moreover, at the time of the traffic stop, there were five car occupants and only two officers. Because "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car," the Supreme Court has held that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop."

16

Maryland v. Wilson, 519 U.S. 408, 414–15 (1997); see also Rodriguez v. United States, 575 U.S. 348, 372 n.2 (2015) (Alito, J. dissenting) (noting that "it remains true that police may ask questions aimed at uncovering other criminal conduct and may order occupants out of their car during a valid stop"). This officer-safety justification provides an independent reason, apart from any reference to the pill bottle, to have ordered the occupants out of the vehicle during the traffic stop.

Accordingly, I conclude that trial counsel was not constitutionally ineffective for failing to raise the arguments Porter argues should have been made, and, considering the foregoing analysis, I further conclude that the Appellate Division did not unreasonably apply Strickland. Woods, 575 U.S. at 316.[3, 4]

### b. The Trial Court's Alternative Justifications for Denying Suppression

Respondent argues that the hearing court also found that Porter was lawfully detained based on Matat's observation that the passengers matched the descriptions of the suspected perpetrators in the shooting, so the outcome would have been the same, even had trial counsel advanced the argument. (Def. Opp'n at 22–23.) The parties dispute whether the officers received a confirmatory description of the shooters before or after they ordered the occupants out of the car, and they

---

[3] Porter's reply brief relies heavily on Mayo v. Henderson for the proposition that his trial counsel was ineffective because he "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." 13 F.3d 528, 533 (2d Cir. 1994). Mayo is triply inapposite: Porter's counsel did not "omit" the issue; even assuming arguendo that it was not raised, that purportedly neglected argument was not at all "particularly strong," id. at 534; and trial counsel's credibility arguments here were not nearly as weak as those addressed in Mayo, where the credibility arguments were made to an appellate court.

[4] I am also not persuaded by Porter's contention that trial counsel's choices were unjustified as a matter of trial strategy because he had "nothing to lose, yet everything to gain" by presenting a stronger theory of suppression. (Pet'r Mem. at 53 (quoting Harrison v. Cunningham, 512 F. App'x 40, 42 (2d Cir. 2013)). Even if that were true, "[w]ith no Supreme Court precedent establishing a 'nothing to lose' standard for ineffective-assistance-of-counsel claims, habeas relief cannot be granted pursuant to § 2254(d)(1) based on such a standard." Knowles, 556 U.S. at 122.

17

dispute the hearing court's factual findings on this point. (Compare Pet'r Mem. at 51–52 and Pet'r Reply at 4–7, with Def. Opp'n at 26–28 & 26 n.4.) The hearing court's findings and conclusions are somewhat inconsistent. The court found that Matat saw the pill bottle, decided to direct the occupants out of the car to further investigate, and at that point observed that the occupants matched the description of the suspects in the shooting. (H2. 28.) Later, however, the court concluded that "when [Matat] observed an unmarked pill bottle in the car and that the occupants of the vehicle with the exception of defendant Porter closely resembled four individuals alleged to have been involved in the shooting earlier [that] morning, . . . he had a reasonable basis upon which to order the occupants out of the car." (H2. 32.) Because of the ambiguity in the state court record, I do not rely on any argument that has as its factual predicate that the officers concluded that the occupants looked like the shooting suspects before asking them to exit the vehicle.

## CONCLUSION

For the reasons set forth above, Porter's petition is denied. Because Porter has failed to make a "substantial showing of the denial of a constitutional right," a Certificate of Appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated: December 22, 2020
      Brooklyn, New York                 /s/ Carol Bagley Amon
                                              Carol Bagley Amon
                                              United States District Judge